**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

STEVEN D. GINSBURG, on behalf of      )
THE VERTICAL GROUP, INC. and          )
STEVEN D. GINSBURG,                   )
        Appellant,               )
                                 )
      v.                       )     Civil Action No. 06-01217
                                 )     (Appeal Related to:
                                 )     Bankruptcy Case No. 05-20640 *and*
                                 )     Adversary Proceeding No. 05-2506)
                                 )     Judge Nora Barry Fischer
DAVID J. BIRENBAUM,                   )
        Appellee.                )

## MEMORANDUM OPINION

## I.    INTRODUCTION

Pending before the Court is an appeal from an order issued by the United States Bankruptcy Court for the Western District of Pennsylvania ("Bankruptcy Court") and entered in Bankruptcy Case No. 05-20640, Adversary Proceeding No. 05-2506 (Docket No. 1). Pursuant to 28 U.S.C. § 158(a), Appellant Steven D. Ginsburg ("Appellant") filed the instant appeal after the Bankruptcy Court granted judgment in favor of David J. Birenbaum ("Appellee") and against Appellant. (Docket No. 29-5). On March 27, 2008, this Court issued a Memorandum Order ("March 27 Memorandum Order") denying the appeal for failure to file a transcript of a proceeding in the underlying bankruptcy action as required under the Federal Rules of Bankruptcy Procedure. (Docket No. 15).[1]

---

[1]     Appellant filed a Motion for Reconsideration of the March 27 Memorandum Order on April 1, 2008, and filed the missing transcript the following day. (Docket Nos. 16 and 17). While that motion was pending before this Court, Appellant filed a Notice of Appeal indicating that it had appealed the March 27 Memorandum Order to the United States Court of Appeals for the Third Circuit. (Docket No. 20). After reviewing Appellant's Motion for Reconsideration of the March 27 Memorandum Order and response thereto, on May 14, 2008 this Court found that excusable

The March 27 Memorandum Order has been vacated by the Court's Order of February 3, 2009, filed contemporaneously with this Memorandum Opinion. (Docket No. 30). Thus, the Court can now address the merits of this case.

The primary issues raised in this appeal are whether the Bankruptcy Court committed legal error by: 1) failing to collaterally estop Appellee from denying his alleged admissions of embezzlement and larceny in state court proceedings in Florida; and, 2) by concluding that the debt owed to Appellant was not excepted from discharge under 11 U.S.C. § 523(a)(4). For the reasons outlined herein, the Court finds that the Bankruptcy Court did not err in determining that collateral estoppel did not apply to the underlying action and that the debt was non-dischargeable under Section 523(a)(4). Accordingly, the Order of the Bankruptcy Court is affirmed.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The following undisputed facts are taken from the hearing held before the bankruptcy court (Docket No. 17-1), the submissions of the parties (Docket Nos. 4, 8), and the Bankruptcy Court's Opinion of July 6, 2006.

The Vertical Group, Inc. ("Vertical Group") was a closely-held Florida corporation, wherein Appellant and Appellee each held fifty percent of its outstanding shares. (Docket No. 4 at 4-5).

---

neglect existed and expressed its intention to grant the motion, vacate its March 27 Memorandum Order, and address the merits of the appeal. (Docket No. 22). On July 3, 2008, the Court of Appeals stayed the Appellant's appeal pending disposition of the instant motion. (*See* Docket No. 23). This Court then ordered supplemental briefing regarding the appeal of the Bankruptcy Court's July 21, 2006 Order. (Docket No. 23). The Appellant and Appellee filed their supplemental briefs on September 5, 2008 and October 15, 2008, respectively. (Docket Nos. 24 and 27). On November 13, 2008, the Court ordered Appellant to file additional documents that were missing from the record. (Docket No. 28). Said documents were filed on November 26, 2008. (Docket No. 29). Accordingly, Appellant's appeal is ripe for disposition.

Appellee was a director of the Vertical Group as well as its president and treasurer.  (*Id*. at 5).  In March of 1997, Appellant extricated himself from the affairs of the business, leaving Appellee in sole control of the Vertical Group's day-to-day operations.  (Docket No. 29-5 at 2).  Subsequently, the business relationship between Appellant and Appellee deteriorated, which resulted in Appellant instituting a shareholder derivative action against Appellee on behalf of the Vertical Group in the Circuit Court for Miami-Dade County, Florida, on April 11, 2000 ("Complaint").[2]  (*Id*. at 2-3.)

### A.    *Florida State Court Proceedings*

On September 26, 2000, Appellant and Appellee executed a settlement agreement ("Settlement Agreement"), which purported to resolve the state court case.[3]  (*Id*. at 4; Docket No.

---

[2]

In his Complaint in Florida state court, Appellant pled three counts.  In Count I, he alleged that Appellee engaged in following: (1) used funds of the Vertical Group to make and receive loans to himself and to others; (2) withdrew cash from the Vertical Group for his personal benefit and financial gain; (3) unlawfully misappropriated the Vertical Group's funds and disposed of the corporation's property without paying all the proceeds to the corporation; (4) unlawfully personally borrowed the Vertical Group's funds where there was no reasonable expectation of a benefit to the corporation; (5) wrongfully and unlawfully spent or diverted the Vertical Group's funds without maintaining proper records and without accounting for the expenditures; (6) wrongfully and unlawfully discharged his duties as a director and officer of the Vertical Group; (7) misapplied and wasted assets of the Vertical Group; (8) did not account for the disposal or transfer of certain real property owned by the Vertical Group; (9) unlawfully paid dividends; (10) refused to account for profits or repay the amounts he withdrew from the Vertical Group; and (11) refused to permit an inspection of the Vertical Group's books and records or to substantiate the above transactions. (Docket No. 14 at ¶6).  In Count II, he requested an order directing Appellee to permit an inspection of the Vertical Group's books and records pursuant to Fla. Stat. § 607.1604.  In Count III, Appellant requested an order dissolving the corporation and appointing a receiver to liquidate the Vertical Group's assets pursuant to Fla. Stat. §§ 607.1431 & 607.1432.  (*Id*. at ¶¶ 10-25).

[3]

The Settlement Agreement set forth that Appellee would purchase Appellant's shares in the Vertical Group for $90,000.  (Docket No. 14-9 at ¶ 5).  The Settlement Agreement also stipulated that the Florida state court would "retain jurisdiction to enforce the Settlement Agreement." (*Id*. at ¶ 9).  Further, the Settlement Agreement provided that if "the Court finds a default occurred by

14-9).

Thereafter, Appellee defaulted on his obligations arising under the Settlement Agreement. (Docket No. 8 at 8). Appellee filed a Stipulation for Entry of Final Judgment Execution Withheld. (Docket No. 14-14) ("Stipulation").[4] In part, the Stipulation provided that the allegations in Appellant's Complaint "set forth sufficient facts to entitle [Appellant] to a final judgment which facts are true and shall have *res judicata* and collateral estoppel effect in any bankruptcy case or proceeding concerning the dischargeability of the debts and obligations ... and such debts shall be non-dischargeable and shall be excepted from discharge." (Docket No. 14-14 at ¶1). On January 29, 2001, the Florida Circuit Court held a hearing,[5] at which it granted Appellant's motion to enforce the settlement agreement and issued a final judgment ("Final Judgment") in favor of Appellant in

_____

[Appellee] or The Vertical Group, Inc., it shall enter Final Judgment with execution in favor of [Appellant] for such sums as remain due hereunder" plus attorneys' fees and related costs. *Id.* at ¶ 9. Moreover, the Settlement Agreement specified that it "shall have *res judicata* and collateral estoppel effect in any bankruptcy case or proceeding concerning the dischargeability of the debts and obligations set forth herein or in any final judgments resulting hereunder ... and such debts shall be non-dischargeable and shall be excepted from discharge." *Id.* at ¶ 10.

[4]

As part of Appellant's argument, he asserts that the Bankruptcy Court committed a factual error when it noted that only Appellant signed the Stipulation and that a hearing was held with respect to the Stipulation. As a result, Appellant argues, the Bankruptcy Court erred by not recognizing the admissions of embezzlement and larceny which Appellant made in the Stipulation. (Docket No. 3 at 20, 21). While it appears that Appellee signed the Stipulation and not Appellant, regardless, the Bankruptcy Court did not rest its holding on who signed the Stipulation.

[5]

At said hearing, the Bankruptcy Court noted that while Appellee's (debtor) attorney was not present, "there was conflicting testimony as to whether debtor participated on a *pro se* basis." (Docket No. 29-5 at 5).

4

the amount of $90,000.[6] (Docket No. 29-5 at 5). Appellee did not appeal the Florida Court's January 29, 2001 Order. Subsequently, on October 4, 2001, the Florida court issued an order, awarding Appellant attorney's fees and costs in the amount of $40,000. (Docket No. 14-13). Following the state court's order, Appellee filed a Motion to Vacate Final Judgment, for Rehearing and Motion to Stay Execution with the Florida Circuit Court. (Docket No. 14-15) ("Motion to Vacate"). On June 5, 2001, the Florida Circuit Court entered an order denying Appellee's Motion to Vacate based on Appellee's failure to comply with a prior court order compelling discovery. (Docket No. 14-17).

### B.    *Bankruptcy Court Proceedings*

On January 19, 2005, Appellee filed a voluntary chapter 7 petition with the Bankruptcy Court sitting in Pittsburgh, Pennsylvania. (Docket No. 29-5 at 5). The Appellee identified Ginsburg on the schedules as having an undisputed general, unsecured claim in the amount of $94,875. *Id.* Subsequently, Appellant commenced an adversary action against Appellee, seeking a determination

---

[6]

In the Final Judgment, the Florida Circuit Court found that Appellee had failed to perform per the Settlement Agreement. (Docket No. 14-12 at ¶ 1). Moreover, the Florida Circuit Court stated,

> Pursuant to the Settlement Agreement, the allegations of [Appellant]'s Complaint . . . set forth sufficient facts to entitle [Appellant] to a final judgment which facts are true and are stipulated to by [Appellee]. As further agreed by [Appellee] and pursuant to the Settlement Agreement, this Final Judgment shall have res judicata and collateral estoppel effect in any bankruptcy case or proceeding concerning the dischargeability of the debts and obligations set forth herein or in any final judgments resulting hereunder . . . and such debts shall be non-dischargeable and shall be excepted from discharge.

(Docket No. 14-12 at ¶ 7).

5

that the $90,000 debt arising under the Final Judgment and the $40,000 debt arising from the order of October 4, 2001 are excepted from discharge by § 523(a)(4)[7] of the Bankruptcy Code.  (*Id.* at 6).

An adversary hearing was held on March 8, 2006 regarding the matter.  (*See* Transcript at Docket No. 17).  The Bankruptcy Court entered an order and judgment in favor of Appellee on July 6, 2006.  (Docket No. 29-5 at 21).  Applying Florida law, the Bankruptcy Court concluded that Appellee was not collaterally estopped in the adversary proceeding from denying his alleged admissions of embezzlement and larceny in the state court proceedings because not all of the elements of collateral estoppel were met.  (*Id*. at 6-12).  The Bankruptcy Court further found that the debt owed to Appellant was not excepted from discharge by § 523(a)(4) of the Bankruptcy Code.  (*Id*. at 12-20).  The Court now turns to the specifics of the Bankruptcy Court's decision, particularly as to collateral estoppel and dischargeability.

### C.     *Bankruptcy Court's Ruling on Collateral Estoppel*

The Bankruptcy Court found that Appellee's stipulation regarding the dischargeability of his debt to Appellant was inconsequential because Appellee "cannot in advance of a bankruptcy filing contract away the right to have his or her debts discharged."  (Docket No. 29-5 at 7)(citing *Alsan Corp. v. DiPierro (In re DiPierro)*, 69 B.R. 279, 282 (Bankr. W.D. Pa. 1987)).  The Bankruptcy

---

[7]     Section 523(a)(4) of the Bankruptcy Code provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [11 USCS § 727, 1141, 1228(a), 1228(b), or 1328(b)] does not discharge an individual debtor from any debt – . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4).

Court determined that the Final Judgment "merely enforced the settlement between [Appellee] and [Appellant]." (*Id*. at 10). Turning to the elements of collateral estoppel, the Bankruptcy Court found that the Final Judgment did not satisfy the third and fifth prongs of collateral estoppel.[8]  As to the third prong, i.e., the same parties or their privies to the prior litigation, the Court concluded that "the judgment and order resolved only matters concerning the settlement agreement between [Appellee] and [Appellant], which in turn had nothing to do with the causes of action [Appellant] had asserted in the complaint on behalf of the corporation." (*Id.* at 11). As to the fifth prong, i.e., whether the issue was critical and necessary to the prior determination, the Court concluded that the seventh provision of the Final Judgment regarding the collateral estoppel effect "was gratuitous for purposes of enforcing the settlement agreement between [Appellee] and [Appellant]. Those facts were not relevant to whether the settlement agreement should be enforced." (*Id.*).

### D.    *Bankruptcy Court's Ruling on Dischargeability*

With regard to dischargeability, the Bankruptcy Court found that the debt owed to Appellant was not excepted from discharge by § 523(a)(4) of the Bankruptcy Code even if all of the elements of collateral estoppel were satisfied because Appellee's actions did not amount to fraud or

---

[8]

Under Florida law,

collateral estoppel will preclude relitigation of an issue when (1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction. Moreover, [(5)] the litigated issue must have been a critical and necessary part of the prior determination.

*Wingard v. Emerald Venture Fla. LLC*, 438 F.3d 1288, 1293 (11th Cir. 2006) (citations and internal quotations omitted).

embezzlement.  (*Id.* at 12).  The Bankruptcy Court stated that the fraud exception did not apply because one of the elements for fraud, fiduciary status, was not satisfied.  (*Id.* at 15).  The Bankruptcy Court stated that the concept of a fiduciary for the purposes of § 523(a)(4) applies in situations with respect to express or technical trusts.  (*Id.* at 14).  The Bankruptcy Court found that the "record in this case is devoid of any evidence indicating that an express trust of which [Appellee] was the trustee, existed in this case."  (*Id.* at 15).

Additionally, the Bankruptcy Court stated that the embezzlement exception did not apply in the matter because Appellant was only seeking a determination in his own right and not with respect to the corporation.  (*Id.* at 17).  Therefore, the second and third prong of the embezzlement requirements were not met because Appellant "did not own the property [Appellee] supposedly misappropriated or converted to his own use.  It was owned by the corporation."  (*Id.* at 18.) Furthermore, the Bankruptcy Court determined that the fifth prong for the embezzlement exception, fraudulent intent, was not satisfied because both parties were using the corporation's assets for their personal benefit.  (*Id.*).

Thereafter on July 17, 2006, Appellant filed a Motion to Reconsider the Bankruptcy Court's Memorandum Opinion and Order of July 6, 2006, (Docket No. 1-7), which he amended the following day.  On July 21, 2006, the Bankruptcy Court entered an order denying Appellant's Motion to Reconsider Memorandum Opinion and Order of July 6, 2006.  (Docket No. 1-10).  On July 31, 2006, Appellant filed this timely appeal.  (Docket No. 1).

E.      *The Instant Appeal*

On October 10, 2006, Appellant filed his Brief of Appellant Steven Ginsburg.  (Docket No.

4). Subsequently, on October 17, 2006, the Honorable Thomas M. Hardiman, the former presiding Judge in this matter, exempted this case from the Court's pilot alternative dispute resolution program because the Court found that the "appeal present[ed] a question of law which the parties require[d] an adjudication on the merits." (Docket No. 5 at 1). Accordingly, on November 6, 2006, Appellee filed his Brief of Appellee. (Docket No. 8). On December 4, 2006, after an extension of time granted by the Court, Appellant filed his Reply Brief of Appellant Steven Ginsburg.[9] (Docket No. 11). On June 22, 2007, the Court ordered the parties to file a notice advising of any changes in the law concerning the issues on appeal. (June 22, 2007 text order). On July 6, 2007, Appellee filed a Notice of Appellee Regarding Changes in Case Law After Filing of Brief. (Docket No. 12). On July 9, 2007, Appellant filed Appellant's Notice Regarding Changes in Case Law After Briefs. (Docket No. 13). In their respective notices, both parties advised that there were no substantive changes in case law since the filing of their initial briefs. Finally, on March 11, 2008, Appellant filed a Supplement, attaching numerous exhibits. (Docket No. 14).

On March 27, 2008, this Court issued a Memorandum Order denying the Appellants's Motion to Reconsider the Bankruptcy Court's Memorandum Opinion and Order of July 6, 2006 for failure to file a transcript of a proceeding in the underlying bankruptcy action as required under the Federal Rules of Bankruptcy Procedure. (Docket No. 15). The March 27 Memorandum Order has been vacated by the Court's Order of February 3, 2009 filed contemporaneously with this Memorandum Opinion. (Docket No. 30). Thus, the Court can now address the merits of this case.

---

[9] On April 6, 2007, the instant matter was reassigned to the undersigned Judge.

In the instant appeal, Appellant argues that the Bankruptcy Court erred in its decisions because all of the elements for collateral estoppel were met and there were sufficient findings to support Appellant's claim that Appellee committed embezzlement or larceny and thus, Appellee's debt is not dischargeable under § 523(a)(4) of the Bankruptcy Code. (Docket No. 3). Appellee responds that the Bankruptcy Court's decision was proper because not all of the elements for collateral estoppel were met. (Docket No. 8). Specifically, Appellee asserts that the Final Judgment was not a full litigation on the merits and that the issues in the prior and present litigation are not the same. (Docket No. 8 at 12, 14).

## III.    STANDARD OF REVIEW

This Court has appellate jurisdiction over final judgments, orders and decrees of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). The Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard and its conclusions of law under a *de novo* standard. *In re SubMicron Sys. Corp.*, 432 F.3d 448, 454 (3d Cir. 2006).

A bankruptcy court's "findings of fact are clearly erroneous when, after reviewing the record, the appellate court 'is left with the definite and firm conviction that a mistake has been committed.'" *In re Piccoli*, Civ. Action No. 06-2142, 2007 U.S. Dist. LEXIS 72533, at *9 (E.D. Pa. Sept. 27, 2007) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))). Under this standard, "[i]t is the responsibility of an appellate court to accept the ultimate factual determinations of the fact-finder unless that determination is either (1) completely devoid of minimum evidentiary support displaying some hue of credibility or (2) bears no rational relationship to the supportive evidentiary data." *DiFederico*

*v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir. 2000) (citations omitted).  In reviewing the Bankruptcy

Court's findings, the Court gives "due regard" to the Bankruptcy Court's credibility determinations.

Fed. R. Bankr. P. 8013.

## IV.    ANALYSIS

Appellant raises the following issues on appeal:

1.      Whether the Bankruptcy Court committed legal error when [it] rejected the [Appellee's] admissions of embezzlement and larceny made in the Florida State Court?

2.      Whether the Bankruptcy Court committed legal error by failing to collaterally estop the [Appellee] from denying his admissions of embezzlement and larceny in the Florida State Court?

3.      Whether the Bankruptcy Court committed legal error by concluding that Appellant did not have standing to bring the underlying non-dischargeability complaint?

(Docket No. 3 at 2).  The Court finds that the first two issues (as presented by Appellant) are closely

intertwined and raise the same discrete issue to be decided:  whether, as a matter of law, the Florida

Final Judgment would have collateral estoppel effect in any future bankruptcy proceeding concerning

the dischargeability of the debts set forth in the judgment.  Hence, the Court will address the first two

issues together and then address the third issue separately.

### A.  Collateral Estoppel

As an initial matter, the Court notes that the collateral estoppel provision in the Settlement

Agreement and Final Judgment do not necessarily bind the Court (as it did not bind the Bankruptcy

Court) because a "debtor cannot contract away the right to a bankruptcy discharge in advance of the

bankruptcy filing."  *In re DiPierro*, 69 B.R. at 282 (citing *Klingman v. Levinson (In re Levinson)*,

58 B.R. 831, 836-837 (Bankr. N. D. Ill. 1986), *aff'd*, 66 B.R. 548 (N.D. Ill. 1986)).

Collateral estoppel, also known as issue preclusion, "bars relitigation of issues adjudicated in a prior action." *Swineford v. Snyder County*, 15 F.3d 1258, 1266 (3d Cir. 1994). "The principles of collateral estoppel apply in discharge proceedings in bankruptcy court." *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 214 (3d Cir. 1997) (citing *Grogan v. Garner*, 498 U.S. 279, 284-85 n.11 (1991); *In re McNallen*, 62 F.3d 619, 624 (4th Cir. 1995)). "The Court shall apply federal principles of ... collateral estoppel with respect to decisions rendered by a federal court, and must apply corresponding state principles with respect to decisions rendered by a state court." *Smith v. Cowden (In re Cowden)*, 337 B.R. 512, 529 (W.D. Pa. 2006)(citations omitted). *See also Del. River Port Auth. v. FOP, Penn-Jersey Lodge 30*, 290 F.3d 567, 573 (3d Cir. 2002) ("A federal court looks to the law of the adjudicating state to determine ... [the] preclusive effect" to be accorded a state court decision). Here, the prior judgment at issue was rendered by the Florida state court, therefore the Court will look to Florida law.[10]

Under Florida law,

> collateral estoppel will preclude relitigation of an issue when (1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction. Moreover, [(5)] the litigated issue must have been a critical and necessary part of the prior determination.

*Wingard v. Emerald Venture Fla. LLC*, 438 F.3d 1288, 1293 (11th Cir. 2006) (citations and internal quotations omitted). *See also CSX Transp.,Inc. v. Bhd. of Maint. of Way Emples.*, 327 F.3d 1309,

---

[10]

The Court notes that the Bankruptcy Court also applied Florida law, and neither party has disputed that Florida law of collateral estoppel applies.

1317 (11th Cir. 2003); *Goodstein Realty Boca Raton, LLC v. Gelinas (In re Gelinas)*, Case No. 05-36668, 2007 Bankr. LEXIS 1431, at *12-13 (Bankr. S. D. Fla. April 18, 2007).[11]  A court must find that all the elements are satisfied before applying collateral estoppel to the dischargeability of the debt.  *In re Smith*, 128 B.R. 488, 490 (S.D. Fla. 1991).[12]  Moreover, the "party claiming the benefit of the former adjudication has the burden of establishing, with sufficient certainty by the record or by extrinsic evidence, that the matter was formerly adjudicated." *State St. Bank & Trust Co. v. Badra*, 765 So. 2d 251, 254 (4th Fla. Dist. Ct. App. 2000).

The Court agrees with the well-reasoned analysis of the Bankruptcy Court as to collateral

---

[11]

Appellant avers that the Bankruptcy Court introduced a new element of collateral estoppel, specifically privity.  (Docket No. 3 at 27).  While Appellant relies upon *Hartnett v. Mustelier (In re Hartnett)*, 330 B.R. 823 (Bankr. S.D. Fla. 2005) in support of this argument, the Bankruptcy Court relied upon *Wingard v. Emerald Venture Florida*, 438 F.3d 1288 (11th Cir. 2006).  Needless to say, the Court will adhere to the Eleventh Circuit's determination as to the elements of collateral estoppel.  Moreover, other Florida courts have applied the privity element in the collateral estoppel analysis.  *See also Stogniew v. McQueen*, 656 So. 2d 917, 919 (Fla. 1995); *Rice-Lamar v. City of Fort Lauderdale*, 853 So.2d 1125, 1131 (4th Fla. Dist. Ct. App. 2003); *Goodman v. Aldrich & Ramsey Enter., Inc.*, 804 So.2d 544, 546 (2d Fla. Dist. Ct. App. 2002).  Therefore, the Court finds that the Bankruptcy Court's application of the privity element was proper.

[12]

*See also Dimmitt & Owens Fin., Inc. v. Green (In re Green)*, 262 B.R. 557, 571 (Bankr. M. D. Fla.2001) (holding that collateral estoppel did not apply because the "critical and necessary" element was not met); *Spires v. Gregg (In re Gregg)*, 268 B.R. 295, 301 (Bankr. N. D. Fla. 2001) (finding that collateral estoppel did not apply because the "critical and necessary" element was not satisfied); *In re Gelinas*, 2007 Bankr. LEXIS, at *15 (holding that "fully litigated" and "critical and necessary" elements were not met and therefore, collateral estoppel could not be applied); *Lary v. Ansari*, 817 F.2d 1521, 1525 (11th Cir. 1987) (determination of plaintiff's fraud claim was not a "critical and necessary part of the judgment" in the original action and thus, a collateral estoppel bar of the claim was inappropriate).

estoppel, in particular as to the fourth element (final decision)[13] and fifth element (litigated issue was critical and necessary to prior determination). First, as to the fourth element, the Bankruptcy Court drew the following conclusion:

> [T]he document captioned "Final Judgment and Order Enforcing Settlement Agreement"issued by the Florida court on January 29, 2001, did not dispose of or adjudicate the issues raised in the complaint by [Appellant] on behalf of the corporation. The judgment and order resolved only matters concerning the settlement agreement between [Appellee] and [Appellant], which in turn had nothing to do with the causes of action [Appellant] had asserted in the complaint on behalf of the corporation. The judgment and order of January 29, 2001, in other words, does not satisfy requirement (3) for collateral estoppel to apply to this adversary action.

(Docket No. 29-5 at 11).

The Court agrees with the Bankruptcy Court's determination as to this issue insofar as there has been no final adjudication on the merits of the three counts in the Florida state court Complaint with respect to the derivative action brought on behalf of the Vertical Group. "A derivative action is one in which a stockholder seeks to sustain in his own name a right of action existing in the corporation. Accordingly, the corporation is the *real party in interest* with the stockholder being only a *nominal* plaintiff." *Provence v. Palm Beach Taverns*, 676 So. 2d 1022, 1024 (4th Fla. Dist. Ct.

---

13

The Bankruptcy Court concluded that the Final Judgment did "not satisfy requirement (3) [(privity)] for collateral estoppel to apply to this adversary action." (Docket No. 29-5 at 11). However, the Court finds that the Bankruptcy Court's analysis encompasses a rationale for the fourth prong (final decision), and even speaks to the second prong (fully litigated), when it found that the Final Judgment "did *not* dispose of or adjudicate the issues raised in the complaint by [Appellant] on behalf of the corporation." (*Id.*)(emphasis in original). Thus, the Court reads that analysis from the Bankruptcy Court to apply to the fourth element of collateral estoppel (final decision) as opposed to the third element (privity).

App. 1996) (citations omitted)(emphasis added). *See also Liddy v. Urbanek*, 707 F.2d 1222, 1224 (11th Cir. 1983). Here, the Final Judgment did not encompass any relief with respect to the Vertical Group's causes of action. Rather, the Final Judgment stated in paragraphs 1 and 2 of the recital portion that Appellant had failed to perform with respect to the Settlement Agreement and therefore, "caused [Appellant] to spend unnecessary and additional sums in seeking [Appellee]'s performance and enforcement of the Settlement Agreement." (Docket No. 14-12 at 1, ¶¶ 1-2). Moreover, in paragraphs 1 and 2 of the decretal portion, the Final Judgment stipulated that "Ginsburg's Motion to enforce the Settlement Agreement is hereby granted, and Final Judgment is hereby entered in favor of Ginsburg" and "Ginsburg hereby recovers from Birenbaum the sum of $90,000." (Docket No. 14-12 at 2, ¶¶ 1-2). The Final Judgment does not pertain to the Vertical Group. Thus, the Court finds that the Bankruptcy Court was correct in concluding that a final determination was not made concerning the three counts in the Complaint filed in Florida state court with respect to the Vertical Group. (*Se*e Docket No. 29-5 at 11).

Second, the Court agrees with the Bankruptcy Court's assessment of the fifth element, i.e., whether the litigated issue was critical and necessary to prior determination. *See Wingard*, 438 F.3d at 1293. The Court finds that the fifth element of collateral estoppel has not been met. As to this issue, the Bankruptcy Court concluded:

> The statement in paragraph 7 of the decretal portion of the judgment and order of January 29, 2001, that the facts as alleged in the complaint brought in the shareholder derivative action were true and entitled Ginsburg to a judgment in his favor was *gratuitous* for purposes of enforcing the settlement agreement between [Birenbaum] and Ginsburg. Those facts were not relevant to whether the settlement agreement should be enforced.

(Docket No. 29-5 at 11)(emphasis in original). While the Bankruptcy Court determined that the fifth prong of collateral estoppel was not met because the provision regarding collateral estoppel in the Final Judgment was "gratuitous," this Court finds that the Appellant failed to satisfy the "critical and necessary" element for additional reasons, to which the Court now turns.[14]

In *In re Green*, 262 B.R. 557, 571 (Bankr. M. D. Fla.2001), the bankruptcy court engaged in an extensive analysis of the "critical and necessary" element to collateral estoppel. There, the controversy concerned a plaintiff's assertion of collateral estoppel arising from a state court judgment. *Id.* at 559. The plaintiff sought to preclude the defendant's defenses of dischargeability based on the state court default judgment due to the defendant's failure to answer a five-count complaint. *Id.* at 559-560. The state court entered a default final judgment against the defendant, however, it did not address any individual causes of action. *Id.* at 564. The bankruptcy court denied the plaintiff's complaint for nondischargeability and denied reconsideration of the final judgment, finding that, after a long and thorough analysis of collateral estoppel under Florida law, in particular the "critical and necessary" element:

> To apply the doctrine of collateral estoppel under Florida law, it must be shown that an issue was a "critical and necessary" part of the judgment entered in the prior proceeding. Where the complaint in the prior proceeding contains multiple counts, but the final judgment only awards the plaintiff a monetary amount without designating the basis for the judgment, the doctrine of collateral estoppel should not be applied because it cannot be shown that any particular allegations in the complaint were "critical and necessary" to the judgment.

---

[14]

While the Court finds that the Appellant has failed to carry his burden as to the "critical and necessary" prong for purposes of the collateral estoppel analysis based upon reasons different than that reached by the Bankruptcy Court, the Court expresses no opinion as to its rationale.

*Id.* at 570-71.[15]  The Court noted the obstacles in attempting to apply collateral estoppel in such

cases:

> Even if all of the allegations in a complaint are deemed established,
> however, this Court cannot conclude that allegations regarding fraud
> are a "critical and necessary" part of a simple default judgment in
> those cases in which both fraud counts and non-fraud counts were
> asserted in the state court complaint and there is no way to distinguish
> which count is the basis for the judgment.

*Id.* at 564.  Stated differently, "[n]o court subsequently reviewing the judgment can know which of

the allegations were essential to the judgment, and the later court cannot know which of the

allegations were 'critical and necessary' to the final judgment."  *Id.* at 567.  Accordingly, the court

held that the doctrine of collateral estoppel did not apply.  *Compare In re Gregg*, 268 B.R. at 300

(holding that summary judgment was precluded because the prior court's judgment did not address

separate counts in the complaint and did not indicate the basis for its decision; therefore, there was

a question as to whether both or either action was essential to the judgment)[16] *with Halpern v. First*

---

[15]

The Court also stated the "critical and necessary" prong in this way:

> [W]here the complaint in the prior proceeding contains multiple
> causes of action, but the final judgment awards only a single
> monetary amount without designating the cause of action to which the
> award relates or specifying a basis for the award, it cannot be known
> whether any particular cause of action was "essential" to the final
> judgment.

*In re Green*, 262 B.R. at 567.

[16]

In *In re Gregg*, the plaintiff sued the defendant in state court when the defendant defaulted
on a promissory note.  268 B.R. at 297.  The lawsuit alleged three claims, including breach of

*Georgia Bank (In re Halpern)*, 810 F.2d 1061, 1065 (11th Cir. 1987) (finding that the inclusion of

detailed findings of fact in the state court judgment satisfied the "critical and necessary" element)

*and Smith v. Beeson (In re Smith)*, 128 B.R. 488, 492 (S. D. Fla. 1991) (finding that the consent

judgments at issue were based on the common law fraud count of each respective complaint and

thus, the fraud issue was critical and necessary part of each of the consent judgments).

    In the instant matter, the Final Judgment: (1) rendered a single monetary award in favor of

Appellant for Appellee's failure to perform pursuant to the Settlement Agreement of September 26,

2000 in the amount of $90,000, (Docket No. 14-12 at 1, 2); (2) concerned a multi-count complaint

containing a fraud count and two non-fraud counts;[17] and (3) it did not determine which of the

---

contract, nonpayment of a promissory note, and fraud. *Id.* Thereafter, a settlement agreement was
reached and a consent judgment was entered in favor of the plaintiff. *Id.* The judgment included
a nonexecution clause and a nondischargeability in bankruptcy clause. *Id.* Moreover, neither the
settlement agreement nor the judgment addressed the allegations in the complaint or contained any
factual findings. *Id.* An amended final judgment was entered which also did not specify any
particular count of the complaint for its basis. *Id.* Subsequently, the defendant filed for bankruptcy
and the plaintiff sought to deny dischargeability of the judgment debt. *Id.* The bankruptcy court
found that because different counts were alleged within the same complaint and the prior court's
judgment addressed the complaint "without any indication of its basis for decision, there [was] a
question as to whether both or either action was essential to the judgment." *Id.* at 300.

[17]

    In Appellant's Complaint, he alleged three counts: (I) Appellee misappropriated the Vertical
Group's assets; (II) an action for a Court-ordered inspection under Fla. Stat. § 607.1604; and (III)
an action for appointment of a receiver and to dissolve a corporation pursuant to Fla. Stat. §§
607.1431, 607.1432. (Docket No. 14 at 1, 4, 5). As to Count II, a plaintiff must prove that the
defendant did not refuse an inspection in good faith and therefore, did not have "a reasonable basis
for doubt about the right of the shareholder to inspect or copy the records demanded." Fla. Stat. §
607.1604(3). As to Count III, with respect to the appointment of a receiver, a plaintiff may
demonstrate "actual fraud, or mismanagement amounting to fraud upon the rights of a minority
stockholder or creditor which may reasonably portend imminent danger of loss of corporate assets
and seriously threaten corporate existence" in order for a receiver to be appointed by a court.
*McAllister Hotel, Inc. v. Schatzberg*, 40 So. 2d 201, 203 (Fla. 1949). However, a "charge of

allegations were essential to the judgment.[18]  There is no evidence in the Final Judgment that the Florida state court based its decision solely on the alleged misappropriation of corporate assets with respect to the enforcement of the Settlement Agreement.  Moreover, a review of the Final Judgment reveals no inclusion of detailed findings of fact with respect to the allegation in the derivative action. The entire weight of Appellant's argument hinges on the statement set forth in paragraph 7: "Pursuant to the Settlement Agreement, the allegations of Plaintiff's Complaint ... set forth sufficient facts to entitle [Appellant] to a final judgment which facts are true and are stipulated to by [Appellee]."  (Docket No. 14-12 at 4).  This Court does not find that this statement is sufficient to establish that any of the particular allegations were "critical and necessary" to the Final Judgment. The fact that the Florida state court stated that all the allegations were true or even that Appellee stipulated that all the claims were true[19] does not resolve the question of which allegations were "critical and necessary" to the state court's Final Judgment.  Of significant relevance here, the *Green*

---

mismanagement or fraud is not essential to the judicial power of a court of chancery to appoint a receiver for a corporation." *Hillsborough Grocery Co. v. Ingalls*, 53 So. 930, 931-932 (Fla. 1910). Lastly, in regard to the judicial dissolution request in Count III, the plaintiff must show that the corporate expenditures made by the defendant were not "made in good faith to satisfy bona fide corporate debts." *Sheller v. Sheller*, 427 So. 2d 322, 1 (4th Fla. Dist. Ct. App. 1983).  As such, Counts II and III required specific findings of fact separate and distinct from Count I.

[18]

The Court finds that it is of no importance that the Court in *Green* declined to apply collateral estoppel as to a consent judgment as opposed to a final judgment enforcing a settlement agreement. *See Gallagher v. Dupont*, 918 So. 2d 342, 347 (5th Fla. Dist. Ct. App. 2005) (citing *Arrieta-Gimenez v. Arrieta-Negron*, 551 So. 2d 1184, 1186 (Fla. 1989)) ("A consent judgment is a judicially approved contract, rather than a judgment entered after litigation, but it is a judgment nonetheless and entitled to the same preclusive, res judicata effect as any other judgment issued by a Florida court").

[19]

*See* Docket Nos. 14-14 and 14-15.

Court noted that "the 'critical and necessary' test is most often used in Florida to distinguish facts essential to a judgment where only one cause of action has been litigated." *In re Green*, 262 B.R. at 565. However here, for example, the Final Judgment could have been based on a finding that both Count I (alleged misappropriation of corporate funds) *and* Count II (relief under a Court-ordered inspection under Florida law) were "critical and necessary" to its decision but not Count III (relief of a receiver and to dissolve a corporation under Florida law). Or, the Final Judgment could have been based on a finding that Count II *and* Count III were "critical and necessary" but not Count I. The lack of specificity for any rationale in the Final Judgment lends itself to numerous hypothetical situations, leaving the Court to speculate as to which allegations the Florida state court based its determination.[20] As a result, this Court cannot ascertain which allegations were "critical and necessary." The Court declines to speculate "because it cannot be shown that any particular allegations in the complaint were 'critical and necessary' to the judgment." *In re Green*, 262 B.R. at 567. Therefore, the Court finds that the Appellant has failed to carry his burden as to the "critical

---

[20] Appellant has cited *Viener v. Jacobs (In re Jacobs)*, 381 B.R. 128 (Bankr. E.D. Pa. 2008) and *Transnation Title Ins. Co. v. Livingston (In re Livingston)*, 389 B.R. 1 ( E.D. Mich. 2008) in support of his argument that collateral estoppel should apply in this case. (Docket No. 24 at 2-3). However, both cases are distinguishable from the instant appeal because the bankruptcy courts in *In re Jacobs* and *In re Livingston* found that the state court rulings at issue were based upon specific factual findings that supported non-dischargeability determinations. *Compare In re Jacobs*, 381 B.R. at 133 (after a non-jury trial, the state court made detailed findings of fact which supported its conclusion that the debtor engaged in fraud and other misconduct) and *In re Livingston*, 389 B.R. at 1 (state court findings pointed to specific actions by the debtors that supported its determination that there was clear and convincing evidence that they had engaged in fraud) with *DirecTV, Inc. v. Figler (In re Figler)*, 391 B.R. 565, 572 (Bankr. W.D. Pa. 2008)(collateral estoppel did not apply where the record of the prior proceeding did not contain factual findings that would support a finding of non-dischargeability).

and necessary" prong of the collateral estoppel analysis and, because not all of elements were satisfied, collateral estoppel does not apply here.[21]  *See In re Smith*, 128 B.R. 488, 490 (S.D. Fla. 1991) ("a Court must find that four elements are satisfied before applying collateral estoppel to prevent the discharge of a debt").[22]

## B. Section 523(a)(4) Dischargeability

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).[23]  However, "exceptions to

---

[21]

The Appellant argues that the Florida state court's "determination of the fact of [Appellee]'s embezzlement or larceny were critical and necessary parts of that Judgment ... Otherwise, the Court could not have made its order and adjudication in paragraph 7 of the Final Judgment ... that the facts were true, [Appellee admitted them], and was thereafter collaterally estopped." (Docket No. 3 at 27). Appellant relies on *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244 (3d Cir. 2006), in which the Court found that independent sufficient alternative findings should be given preclusive effect. *Id.* at 254.  As an initial point, in *Jean Alexander,* the Third Circuit applied federal law as opposed to Florida law.  As to the substance, the Court finds Appellant's reliance on *Jean Alexander* to be misplaced insofar as review of the Final Judgment here does not reveal any findings, let alone alternative findings, as Appellant suggests in his argument.  Further, Appellant fails to identify any independent sufficient alternative findings or articulate how the same apply in the present matter.  (Docket No. 3 at 27, Docket No. 11 at 5).

[22]

The *Smith* Court applied only four elements in its collateral estoppel analysis, omitting the privity element.  *See also Goodman*, 804 So. 2d at 546-547 ("For the doctrine of collateral estoppel to apply to bar relitigation of an issue, five factors *must* be present: (1) an identical issue must have been presented in the prior proceeding; (2) the issue must have been a critical and necessary part of the prior determination; (3) there must have been a full and fair opportunity to litigate" that issue; (4) the parties in the two proceedings must be identical; and (5) the issues must have been actually litigated") (emphasis added).

[23]

The Court notes that the phrase "while acting in a fiduciary capacity" modifies only the "fraud or defalcation" exception and not the "embezzlement or larceny" exception.  *In re Funventures in Travel, Inc. v. Dunn*, 39 B.R. 249, 251 (E.D. Pa. 1984).  *See also Nichols v. Nichols (In re Nichols)*, Bank. No. 98-34520, 1999 Bankr. LEXIS 1231, at *23 (Bankr. E.D. Pa. Sept. 29,

21

discharge are to be strictly construed in favor of the debtor." *United States v. Fegeley* (*In re Fegeley*), 118 F.3d 979, 983 (3d Cir. 1997)(citing *Dalton v. IRS*, 77 F.3d 1297, 1300 (10th Cir. 1996)).

1. *Fraud or Defalcation While Acting In a Fiduciary Capacity*

The Bankruptcy Court made a determination as to whether Appellee committed fraud or defalcation while acting in a fiduciary capacity for purposes of § 523(a)(4), finding that Appellee did not commit fraud or defalcation because the first prong (fiduciary capacity) was not met. "In order to demonstrate Appellee committed fraud or defalcation , Appellant must prove that: "(1) [Appellee] was acting in a fiduciary capacity; and (2) [Appellee] committed fraud or defalcation while acting in that capacity." *Heer v. Scott (In re Scott)*, 294 B.R. 620, 630 (Bankr. W. D. Pa. 2003) (citing *Subich v Verrone (In re Verrone)*, 277 B.R. 66, 71 (Bankr. W.D. Pa. 2002)). The Bankruptcy Court stated that the "concept of a fiduciary for purposes of § 523(a)(4) applies only in situations in which an express or technical trust exists." (Docket No. 29-5 at 14).[24] Under Florida law, "[t]he essential elements of a trust are: (1) the settlor or grantor, (2) the trustee, (3) the beneficiaries, and (4) an indication of the property conveyed for the purpose of the trust." *McLemore v. McLemore*, 675 So. 2d 202, 205 (1st Fla. Dist. Ct. App. 1996) (citing *Reid v. Barry*, 112 So. 846, 854 (Fl. 1927)). " 'The

_____

1999).

[24]    The Bankruptcy Court applied federal law as to the issue of the fiduciary capacity but noted that the Third Circuit "has not said whether the criteria for determining whether a debtor acted in a fiduciary capacity are the same as the criteria for making such a determination under state law." (Docket No. 29-5 at 14). Because Appellant does not address the fraud exception, let alone the applicable law for a fiduciary capacity, the Court declines to further dwell on the same.

intent to create a trust must be definite and particular,' and the beneficiaries of a trust must be clearly ascertainable." *McLemore*, 675 So. 2d at 205 (quoting *Watson v. St. Petersburg Bank & Trust Co.*, 146 So. 2d 383, 385 (2d Fla. Dist. Ct. App. 1962)). The Bankruptcy Court found that the "record in this case [was] devoid of any evidence indicating that an express trust, of which debtor was the trustee, existed in this case." (Docket No. 29-5 at 15). On appeal, Appellant does not challenge the Bankruptcy Court's finding as to the fraud exception. Therefore, the Court need not address this issue. Rather, Appellant only addresses the Bankruptcy Court's finding as to the "embezzlement or larceny" exception, (Docket No. 3 at 29), to which the Court now turns.

2.      *Embezzlement or Larceny*

Appellant has the burden of establishing embezzlement or larceny by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991). These exceptions to discharge are "construed strictly against the objecting creditor." *Schlessinger v. Schlessinger (In re Schlessinger)*, 208 Fed. Appx. 131, 133 (3d Cir. 2006)(non-precedential)(citing *In re Fegeley*, 118 F.3d at 983).[25] Additionally, "[t]he terms embezzlement and larceny are to [b]e determined under federal common law." *N. Phila. Fin. P'ship v. Steele (In re Steele)*, Bank. No. 04-14597, 2005 Bankr. LEXIS 197, at *7-8 (Bankr. E.D. Pa. Jan. 28, 2005) (citing *Nassau Suffolk Limonsine Association v. Jardula (In re Jardula)*, 122 B.R. 649, 653 (Bankr. E.D. N.Y. 1990)).

"Embezzlement is the fraudulent appropriation of property by a person to whom such

---

[25]

The Court recognizes *In re Schlessinger* is a non-precedential opinion. However, the panel's helpful analysis of a creditor's claims of larceny and embezzlement is persuasive as it relies on several precedential opinions. *See* 208 Fed. Appx. at 133.

property has been entrusted or into whose hands it has lawfully come." *In re Schlessinger*, 208 Fed.

Appx. at 133 (citing *Moore v. United States*, 160 U.S. 268 (1895)). "Larceny, on the other hand, is

the felonious taking of another's personal property with the intent to convert it or deprive the owner

of the same." *In re Schlessinger*, 208 Fed. Appx. at 133 (citing Collier on Bankruptcy AP523.10

(15th ed. 2006)).[26]

As the Bankruptcy Court noted, embezzlement and larceny both require the appropriation

of another's property. (Docket No. 29-5 at 16). The Bankruptcy Court found that Appellant was not

seeking a determination that any debt owed to the Vertical Group by Appellee is excepted from

discharge by § 523(a)(4) of the Bankruptcy Code, but rather that the debt owed to Ginsburg should

be discharged.[27] (*Id.* at 17). Moreover, the Bankruptcy Court found that Appellant did not own the

property that Appellee allegedly misappropriated or converted for his own use because it was owned

by the corporation.[28] (*Id.* at 18). Lastly, the Bankruptcy Court found that "the requisite fraudulent

intent for embezzlement or larceny to occur was not present" because there was "an informal, pre-

---

[26]

"Larceny differs only from embezzlement in the manner in which the property comes into the hands of the person charged with fraudulently appropriating it." *In re Steele*, 2005 Bankr. LEXIS 197, at *8 n.5.

[27]

The Bankruptcy Court points to various paragraphs in the Appellant's adversary action, in which Appellant refers to the Settlement Agreement, the Final Judgment, and an October 4, 2001 Order as to attorney fees and costs, all of which represent debts owed to Appellant and not the Vertical Group. (Docket No. 29-5 at 17-18).

[28]

The Court notes that Appellant does not address the Bankruptcy Court's finding that he did not own the property being misappropriated, rather Appellant lists various provisions made in his Complaint that Appellee misused corporate funds and argues that the Bankruptcy Court ignored Appellee's embezzlement admission in the Stipulation. (Docket No. 3 at 30-31).

existing agreement between [Appellant and Appellee] that the corporation would serve as their collective piggybank and that each of them would use the corporation's assets for their personal benefit when they saw fit to do so." (*Id.*)

The Court reiterates the fact that it reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard. *In re SubMicron Sys. Corp.*, 432 F.3d at 454. Under this standard, the Bankruptcy Court's factual findings with respect to credibility determinations will be given "due regard." *In re Piccoli*, 2007 U.S. Dist. LEXIS 72533, at *9.[29] This Court gives deference to the Bankruptcy Court's determination from the adversary hearing held on March 8, 2006 that both parties were participating in an informal agreement to use the Vertical Group's assets for their personal benefit and, therefore, the intent element of the embezzlement or larceny exception was not met. *Anderson*, 470 U.S. at 575.

Because Appellant is a shareholder of the Vertical Group and he is asserting a debt owed to him personally, the Court finds that a claim for the embezzlement or larceny exception has not been proven under § 523(a)(4) of the Bankruptcy Code. *See Estate of Harris v. Dawley (In re Dawley),* 312 B.R. 765, 781 (Bankr. E. D. Pa. 2004) (findings that debtor embezzled corporate funds did not establish nondischargeability of a judgment debt of a shareholder because it was the corporation's funds that were being misappropriated). Therefore, the Court concludes that the embezzlement or

---

[29]

Moreover, the Court notes that the Supreme Court has held that "when findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*, 470 U.S. at 575 (citing *Wainwright v. Witt*, 469 U.S. 412 (1985)).

larceny exception does not apply in the instant matter and the debt owed by Appellee to Appellant is not excepted from discharge by § 523(a)(4) of the Bankruptcy Code.

## V.  CONCLUSION

In accordance with the foregoing, the Court finds that the Bankruptcy Court did not err in concluding that collateral estoppel did not apply in the present matter and that the debt owed by Appellee to Appellant is not excepted from discharge by § 523(a)(4) of the Bankruptcy Code. Accordingly, Appellant's appeal from the Bankruptcy Court's Order denying Appellant's Motion to Reconsider the Bankruptcy Court's Memorandum Opinion and Order of July 6, 2006 will be DENIED and the Bankruptcy Court's Order is AFFIRMED.  An appropriate Order follows.


_s/ Nora Barry Fischer_
Nora Barry Fischer
United States District Judge

Date:  February 9, 2009

cc:  All Counsel of Record

The Honorable Bernard Markovitz
United States Bankruptcy Judge